IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 19, 2012 Session

## SANDI D. JACKSON v. TENNESSEE BOARD OF NURSING

**Direct Appeal from the Chancery Court for Davidson County**
**No. 09-895-I     Claudia C. Bonnyman, Chancellor**

_____

**No. M2012-00241-COA-R3-CV - Filed October 11, 2012**

_____

The Tennessee Department of Health filed civil charges against Nurse Jackson alleging that she had inappropriately prescribed medications for her daughter. Before a hearing on the merits was held, however, the Department filed a Notice of Nonsuit without prejudice. After an Order of Voluntary Dismissal was entered, Nurse Jackson filed a Petition in the chancery court seeking dismissal of the case against her *with prejudice*, as well as her attorney fees expended, claiming that the Board of Nursing had subjected her to an unwarranted investigation and prosecution which was "not well grounded in fact and was not warranted by existing law, rule or regulation[.]" She did not, however, seek a consideration of the merits of the charges against her. The chancery court dismissed Nurse Jackson's Petition. We find that the chancery court lacked subject matter jurisdiction to consider her Petition; therefore, the judgment of the chancery court is vacated and the case is dismissed.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Vacated and Case Dismissed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Sandi D. Jackson

Robert E. Cooper, Jr., Attorney General and Reporter, Sara E. Sedgwick, Senior Counsel, Nashville, Tennessee, for the appellee, Tennessee Board of Nursing

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

On February 5, 2007, the Tennessee Department of Health, Division of Health Related Boards (the "Department"), filed a "Notice of Charges and Memorandum of Assessment of Civil Penalties" ("Notice of Charges") against Sandra D. Jackson ("Nurse Jackson"), who held both a registered nurse license and an advanced practice nurse license.  The Notice of Charges alleged that Nurse Jackson had "inappropriately prescribed medications for her child by utilizing information of physicians she was previously affiliated with."  It further stated that the alleged prescribing physicians either had not treated Nurse Jackson's child, had no medical records regarding such child, or had authorized lesser-prescriptions than those filled by Nurse Jackson.  The Notice of Charges alleged the following violations: (1) Tenn. Comp. R. & Regs. 1000-1-.13(1)(t) "Over-prescribing, or prescribing in a manner inconsistent with Rules 1000-04-.08 and 1000-04-.09"; (2) Tenn. Comp. R. & Regs. 1000-1-.13(u) "Practicing professional nursing in a manner inconsistent with T.C.A. § 63-7-103"; (3) Tenn. Comp. R. & Regs. 1000-1-.13(w) "Engaging in acts of dishonesty which relate to the practice of nursing"; and (4) Tennessee Nursing Act, Tennessee Code Annotated section 63-7-115(a)(1)(F) "unprofessional conduct[.]"  The Notice of Charges contained notice of a contested case hearing scheduled for March 7, 2007.

On February 8, 2007, Nurse Jackson filed a "Motion for More Definite Statement." Thereafter, the Department filed an "Amended Notice of Charges and Memorandum of Assessment of Civil Penalties" ("Amended Notice of Charges"),[1] on June 15, 2007, which contained more detailed factual allegations regarding specific prescriptions and the alleged five prescribers thereof,[2] and which set the dates of alleged wrongdoing between 2002 and 2004.  The Amended Notice of Charges rescheduled the contested case hearing for September 5, 2007.

On July 16, 2007, Nurse Jackson filed her "Response to Amended Notice of Charges and Memorandum of Law of Civil Penalties," in which she denied that she "acted inappropriately, dishonestly, unprofessionally or illegally."  She did not, however, challenge the validity of any of the charged causes of action.  On August 3, 2007, Nurse Jackson filed

---

[1]The Amended Notice of Charges contained the same causes of action as the original Notice of Charges.

[2]Specifically, the Amended Notice of Charges stated that the prescriptions requested in the name of Nurse Jackson's daughter "were supposedly authorized by Dr. Edward Eastham, Dr. Charles Emerson, Dr. John Baites, Dr. Michael Hill, and Dr. Robert Lim."

a "Motion to Amend Response to Amended Notice of Charges and Memorandum of Assessment of Civil Penalties," attempting to name a physician who had allegedly prescribed a certain medication. However, her amended response again failed to challenge the validity of any of the charged causes of action or to assert that such were invalid or not in effect at the time of her alleged inappropriate conduct.

On August 13, 2007, Nurse Jackson filed a "Motion for Charge as to Status of Law Prior to July 1, 2003." The motion requested that the administrative law judge ("ALJ") charge the Board of Nursing (the "Board") as to the language of Tennessee Code Annotated section 63-7-123(b)(3)(A)[3] prior to July 1, 2003. A violation of section 63-7-123(b)(3)(A) was not specifically charged against Nurse Jackson, but such section is referenced in section 63-7-103(2)(D),[4] which was charged against her.

Nurse Jackson filed a "Motion to Strike Allegation" on August 15, 2007, claiming that Rules 1000-4-.08 and 1000-4-.09 did not become effective until 2005. Nurse Jackson, however, did not challenge the effectiveness of the remaining rule violations charged: Tenn. Comp. R. & Regs. 1000-1-.13(u) "Practicing professional nursing in a manner inconsistent with T.C.A. § 63-7-103"; Tenn. Comp. R. & Regs. 1000-1-.13(w) "Engaging in acts of dishonesty which relate to the practice of nursing[;]" or Tenn. Code Ann. § 63-7-115(a)(1)(F) "unprofessional conduct[.]"

Also in August 2007, Nurse Jackson filed the affidavits of Charles Whitney Emerson, III, MD, John E. Baites, MD, and Helen C. Burks, MD, and she notified the Department of

---

[3]At the time of Nurse Jackson's motion, Tennessee Code Annotated section 63-7-123(b)(3)(A) provided:

> Any prescription written and signed or drug issued by a nurse practitioner under the supervision and control of a supervising physician shall be deemed to be that of the nurse practitioner.

Whereas, prior to July 1, 2003, the statute provided:

> Any prescription written and signed, and/or drug issued by a nurse practitioner shall be deemed that of the physician under whose supervision and control the nurse practitioner is prescribing.

[4]Tennessee Code Annotated section 63-7-103(2)(D) provides that "Professional nursing" includes "(D) Administration of medications and treatments as prescribed by a licensed physician, dentist, podiatrist or nurse authorized to prescribe pursuant to § 63-7-123."

their proposed use during a contested case hearing.[5]  However, prior to the scheduled September 5, 2007 hearing, counsel for the Department notified the Board that the Department would file a Notice of Nonsuit without prejudice in the matter pursuant to Tennessee Rule of Civil Procedure 41.01.  Thus, no contested case hearing was held.  The Department filed its formal "Notice of Nonsuit" on October 9, 2007.  Due to a clerical error, though, a copy of the Notice of Nonsuit rather than of an Order of Dismissal was sent to the parties from the Administrative Procedures Division on October 10, 2007.  However, on March 19, 2009, the ALJ entered an "Order of Dismissal" *nunc pro tunc* to October 9, 2007.

On May 7, 2009, Nurse Jackson filed a *pro se* "Petition for Writ of Certiorari,"[6] ("Petition") against the Board in the Davidson County Chancery Court.  In her Petition, Nurse Jackson claimed that the Board subjected her to an unwarranted investigation and prosecution which was "not well grounded in fact and was not warranted by existing law, rule or regulation[.]"[7]  Therefore, Nurse Jackson sought to have the matter dismissed *with*

---

[5]Dr. Helen Burks was not identified in the Amended Notice of Charges, and no affidavits were provided for Dr. Edward Eastham, Dr. Michael Hill, or Dr. Robert Lim who were identified in the Amended Notice of Charges as alleged prescribing physicians.

[6]Although styled as "Petition for Certiorari," Nurse Jackson also sought "judicial review" pursuant to the Uniform Administrative Procedures Act ("UAPA"), Tennessee Code Annotated sections 4-5-322(a)(1), (b)(1)(A).  The Board claims that the chancery court treated the petition as one for judicial review, rather than for certiorari, and it further claims that the petition failed to satisfy the requirements of a petition for writ of certiorari.

[7]Tennessee Code Annotated section 4-5-325 provides that

(a) When a state agency issues a citation to a person, local governmental entity, board or commission for the violation of a rule, regulation or statute and such citation results in a contested case hearing, at the conclusion of such hearing, the hearing officer or administrative law judge may order such agency to pay to the party issued a citation the amount of reasonable expenses incurred because of such citation, including a reasonable attorney's fee, if such officer or judge finds that the citation was issued:

(1) Even though, to the best of such agency's knowledge, information and belief formed after reasonable inquiry, *the violation was not well grounded in fact and was not warranted by existing law, rule or regulation*[.]

. . . .

(b) If a final decision in a contested case hearing results in the party issued a citation seeking *judicial review* pursuant to § 4-5-322, the judge, at the conclusion of the hearing, may make the same findings and enter the same order as permitted the hearing officer or administrative

(continued...)

-4-

*prejudice* as well as "to recoup the $17,135.00 spent in attorney's fees[8] pursuant to T.C.A. § 4-5-325(a)(1)-(2) & (b)." Nurse Jackson did not, however, seek a contested case hearing regarding, or consideration of the merits of, the charges previously nonsuited. Nurse Jackson amended her Petition ("Amended Petition" or sometimes together with her Petition for Writ of Certiorari, "Petition") on April 29, 2010. Thereafter, the Board filed the administrative record pursuant to Tennessee Code Annotated section 4-5-322(d) on September 29, 2010.

On February 22, 2011, the Board filed a "Motion to Dismiss" claiming that Nurse Jackson's Petition was not an appealable final order under Tennessee Code Annotated section 4-5-322, and therefore that the chancery court lacked subject matter jurisdiction to hear the matter. Alternatively, the Board argued that the Petition was barred by res judicata, collateral estoppel,[9] or by Nurse Jackson's failure to exhaust her administrative remedies.

Ultimately, the chancery court denied the Board's Motion to Dismiss "not[ing] that Tenn. Code Ann. § 4-5-325 has not been construed extensively, that there is very little case law concerning that section, and that the Court wishes to consider everything that the Court of Appeals has said about it before deciding this case."[10] The court directed the parties to file briefs prior to oral argument in the case.

Following oral argument[11] on August 15, 2011, the chancery court entered a very thorough "Memorandum and Order," on January 3, 2012, denying Nurse Jackson's Petition in its entirety, and declining to award her any attorney fees. The "Memorandum and Order" contained the following relevant findings of fact:

---

[7](...continued)
law judge pursuant to subsection (a).
(emphasis added).

[8]Regarding Nurse Jackson's attorney fees, the technical record before us includes a printout of payments allegedly made by Nurse Jackson to her former attorney, Culwell E. Ward. Nurse Jackson's brief states that the amount of fees is uncontested; the Department, however, disputes this assertion.

[9]The motion noted "several prior lawsuits" by Nurse Jackson "against the Tennessee Board of Nursing members and other state officials and employees" seeking $17,135.00 in attorney fees "all arising out of charges that Ms. Jackson inappropriately wrote prescriptions for her own daughter."

[10]The chancery court implicitly rejected the Board's argument that it lacked subject matter jurisdiction to hear the matter.

[11]The record contains no transcript of oral argument.

Ms. Jackson filed a Response to the Amended Notice of Charges and . . . Ms. Jackson filed a Motion to Amend her Response to the Amended Notice of Charges, but in neither filing did she assert that the charged Board rules were in any way invalid or not in effect at the time of Ms. Jackson's charge of inappropriate conduct. . . . Ms. Jackson filed a Motion for Charge as to Status of Law Prior to July 1, 2003, which did not seek to have the ALJ charge the Board regarding the status of any of the charged regulatory violations.

. . . Ms. Jackson filed a Motion to Strike a portion of one of the charged rule subsections, Tenn. Comp. R. & Regs. 1000-1-.13(t), alleging that the rules referenced in the charged rule violation, (namely, rules 1000-04-.08 and -.09) did not become effective until 2005, but she did not challenge the remaining rule subsections with which she had been charged . . . nor did she challenge the underlying statutory grounds for the charges that were brought against her under the Nurse Practice Act[.]

. . . . Prior to the contested case hearing, the State's attorney notified the Board [and Ms. Jackson] that the State would file a Notice of Nonsuit without prejudice, pursuant to Tenn. R. Civ. P. 41.01. No contested case hearing was held.

Ms. Jackson filed this judicial review petition[] seeking $17,135.00 in attorney's fees. The record reflects that Ms. Jackson never sought any attorney's fees at the agency level, and neither did the ALJ consider any request for attorney's fees or make any ruling in that request.

Further, its "Analysis and Decision" section contained the following, in part:

In reaching this decision, the Court carefully reviewed the entire record below, including the charges in this case along with the physician affidavits. The Court further reviewed the petitioner's analysis of the charges and why she asserts that she was entitled to treat her child and to prescribe medication for her child. However, the Court cannot judge the doctors' affidavits or the reasons for the State having taken a voluntary nonsuit. The doctors' affidavits do not answer all the questions concerning the authority of an advanced practice nurse to prescribe medications for her daughter. The Court notes that the concern about this minor child was warranted since the petitioner's child had numerous prescriptions and, although some of the doctors were aware of these prescriptions, it was not at all clear that all of the doctors were aware of these prescriptions. The petitioner worked for several doctors over a period

of time, and this caused some complexity in reading the prescriptions and the affidavits. At any rate, this Court cannot tell from the record whether the State overreached or if the State was wrong in its judgment that it should bring charges against the petitioner. There are not enough facts in the record to look at and analyze; therefore, the Court spent most of its time analyzing the law. In short, the petitioner has failed to carry her burden under Tenn. Code Ann. § 4-5-325 of showing that the violations were not well grounded in fact and were not warranted by existing law, rule or regulation. (The Court notes further that the petitioner is not saying that the State had an improper purpose under § 4-5-325(a)(2)). Moreover, the petitioner cannot carry her burden at the judicial review level in this Court because the petitioner filed this lawsuit solely to address fees, and for no other reason, since she was not asking this Court to address the merits of the charges. Therefore, for the reasons discussed below, the Court dismisses the petitioner's claims for attorney's fees, both at the agency level as well as in the Chancery Court.

In its Memorandum and Order, the chancery court then found that Nurse Jackson, by failing to request attorney fees below, had failed to provide notice that she would seek such fees, as it found was required by Tennessee Rule of Civil Procedure 9.01.[12] The court further declined to award Nurse Jackson attorney fees "for the time expended here in judicial review because it was the petitioner who sought relief in this Court, [and] the State did not seek any relief nor did it pursue its prior charges against the petitioner at this level." Finally, the chancery court declined to remand the case to the ALJ for consideration of attorney's fees, noting that the ALJ "would have very little to analyze because the papers filed in preparation for the hearing were somewhat cryptic and do not answer the concerns about supervision of a nurse as she prescribes for a family member." And, the court stated, that Nurse Jackson "would not be able to carry her burden that there was wrongdoing at the agency level, and she cannot show from the record that she was pursued wrongfully or illegally." Nurse Jackson timely appealed.

---

[12]The chancery court cited Tenn. Comp. R. & Regs. 1360-04-01-.01-3, which provides that

In any situation that arises that is not specifically addressed by these rules, reference may be made to the Tennessee Rules of Civil procedure for guidance as to the proper procedure to follow, where appropriate and to whatever extent will best serve the interests of justice and the speedy and inexpensive determination of the matter at hand.

## II. ISSUES PRESENTED

Nurse Jackson presents the following issue for review:

1.    Whether the chancery court erred in holding that Appellant's petition for *certiorari* did not meet the applicable requirements of Tenn. Code Ann. § 4-5-325.[13]

Additionally, the Board presents the following issues:

1.    Whether the chancery court correctly denied Nurse Jackson's request for attorney fees under Tenn. Code Ann. § 4-5-325(a)(1) and correctly dismissed her petition for *judicial review*;

2.    Whether the chancery court properly denied Nurse Jackson's request for attorney fees incurred in the chancery court; and

3.    Whether the chancery court lacked subject matter jurisdiction to hear this judicial review matter.

For the following reasons, we find that the chancery court lacked subject matter jurisdiction to consider Nurse Jackson's Petition; therefore, the judgment of the chancery court is vacated and the case is dismissed.

## III. STANDARD OF REVIEW

"Under the UAPA, administrative agency decisions are subject to chancery court review that is conducted without a jury and is limited to the administrative record." *City of Memphis v. Civil Service Comm'n*, 238 S.W.3d 238, 242 (Tenn. Ct. App. 2007) (citing Tenn. Code Ann. § 4–5–322(g) (2005)) (providing, however, that review of procedural errors is not limited to the administrative record). The scope of judicial review is set forth in Tennessee Code Annotated section 4-5-322(h):

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;

---

[13] As cited above, section 4-5-325 of the UAPA concerns *judicial review*.

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) (A) Unsupported by evidence which is both substantial and material in light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

**Tenn. Code Ann. 4–5–322(h)**.

## IV. DISCUSSION

As a threshold issue, we must first address the Board's argument that the chancery court lacked subject matter jurisdiction to hear Nurse Jackson's petition for judicial review.[14] The issue of subject matter jurisdiction may be raised at any time in any court. *Freeman v. CSX Transp., Inc.*, 359 S.W.3d 171, 176 (Tenn. Ct. App. 2010) (citations omitted).

As discussed above, in its Motion to Dismiss, the Board argued that the chancery court lacked subject matter jurisdiction to hear Nurse Jackson's Petition because the ALJ's Order of Voluntary Dismissal pursuant to Tennessee Rule of Civil Procedure 41.01 was not an appealable final order within the meaning of Tennessee Code Annotated sections 4-5-314(c) or 4-5-322(a)(1). On appeal, the Board reasserts its lack-of-jurisdiction argument.

---

[14]Although Nurse Jackson attempted to petition both for a writ of certiorari and for judicial review, the chancery court properly treated the petition as one for judicial review. In any event, both Nurse Jackson's Petition and her Amended Petition failed to satisfy the requirements set forth in Tennessee Code Annotated section 27-8-106 "that a petition for a writ of certiorari be 'sworn to' and state that 'it is the first application for the writ.'" *Nebel v. Bd. of Prof'l Responsibility*, No. M2010-00420-SC-R3-BP, 2011 WL 197868, at *1 (Tenn. Jan. 21, 2011) (quoting Tenn. Code Ann. § 27-8-106 (2000)). As stated by our Supreme Court, "failure to satisfy these requirements deprives trial courts of jurisdiction to review a hearing panel's decision." *Id.* (citing *Bd. of Prof'l Responsibility v. Cawood*, 330 S.W.3d 608, 609 (Tenn. 2010)). Insofar as Nurse Jackson could have sought a writ of certiorari, she failed to comply with the statutory requirements, depriving the chancery court of jurisdiction.

Specifically, it contends that jurisdiction is lacking because the Board did not decide the contested case after a hearing and because the Order of Voluntary Dismissal did not "include conclusions of law, the policy reasons therefor, and findings of fact for all aspects of the order" as required by the UAPA, Tenn. Code Ann. § 4-5-314(c).

We agree that the chancery court was without jurisdiction to consider Nurse Jackson's Petition for judicial review. As previously stated by the middle section of this Court, the UAPA "is inapplicable to proceedings that do not fit within its adjudicatory definitions." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480-81 (Tenn. Ct. App. Oct. 15, 1999) (citing *National Health Corp. v. Snodgrass*, 555 S.W.2d 403, 405-06 (Tenn. 1997); *Mid-South Indoor Horse Racing, Inc. v. Tenn. State Racing Comm'n*, 798 S.W.2d 531, 536 (Tenn. Ct. App. 1990)). "Judicial review under the Act is limited to final decisions in contested cases."[15] *Id.* at 481 (citing Tenn. Code Ann. § 4-5-322(a)(1) (1998); Ben. H. Cantrell, *Judicial Review Under the Tennessee Uniform Administrative Procedures Act–An Update*, 13 Mem. St. U.L.Rev. 589, 595 (1983)). "Thus, judicial review under Tenn. Code Ann. § 4-5-322 is not available if the proceeding to be reviewed is not a contested case." *Id.* (citing *Mid-South Indoor Horse Racing, Inc.*, 798 S.W.2d at 536).

Tennessee Code Annotated section 4-5-102(3) defines a "[c]ontested case" as "a proceeding, including a declaratory proceeding, in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by any agency after an opportunity for a hearing." Regarding Nurse Jackson's right to a hearing, the Rules of the Tennessee Department of State provide in part:

> (1) Commencement of Action. A contested case proceeding may be commenced by original agency or public action, by appeal of a person from an agency action, by request for hearing by an affected person, or by any other lawful procedure.
>
> (2) Notice of hearing. In every contested case, a notice of hearing shall be issued by the agency, which notice shall comply with T.C.A. § 4-5-307(b).

**Tenn. Comp. R. & Regs. 1360-04-01-.05**.[16]

The Board concedes that the filing of the Notice of Charges against Nurse Jackson

---

[15]Although not applicable here, Tennessee Code Annotated section 4-5-322(a)(1) provides that "A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

[16]This Rule is cited by Board of Nursing Rule 1000-3. **Tenn. Comp. R. & Regs. 1000-3**.

commenced a contested case *proceeding*. However, when the Board non-suited the case against Nurse Jackson prior to any type of hearing in the matter–ultimately resulting in the entry of an Order of Voluntary Dismissal–this was no longer a "proceeding . . . in which [her] legal rights, duties or privileges [were] required . . . to be determined . . . after an opportunity for a hearing." *See* **Tenn. Code Ann. § 4-5-102(3)**. Thus, we conclude that this was not a "contested case." Judicial review is, therefore, unavailable to Nurse Jackson pursuant to Tennessee Code Annotated section 4-5-322, and the chancery court was without jurisdiction to consider her petition for such.[17] *See Tenn. Envir. Council v. Water Quality Control Bd.*, 250 S.W.3d 44, 57-58 (Tenn. Ct. App. 2007) (finding the trial court lacked subject matter jurisdiction over an issue not raised in the disputed case proceedings). Accordingly, the judgment of the chancery court is vacated and the case is dismissed. *See Pickard v. Tenn. Dept. of Envir. and Conserv.*, No. M2011-01172-COA-R3-CV, 2012 WL 3329618, at *6 (Tenn. Ct. App. Aug. 14, 2012) ("[W]hen an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal.") (citations omitted). All remaining issues are pretermitted.

## V. CONCLUSION

For the aforementioned reasons, the judgment of the chancery court is vacated and the case is dismissed. Costs of this appeal are taxed to Appellant, Sandi D. Jackson, and her surety, for which execution may issue if necessary.

_____

_____

ALAN E. HIGHERS, P.J., W.S.

---

[17]Moreover, as cited above, Tennessee Code Annotated section 4-5-325 provides for the recovery of attorney fees "at the conclusion of [a contested case] hearing."